1   ELIZABETH STAGGS WILSON, Bar No. 183160
    estaggs-wilson@littler.com
2   JAMES PAYER, Bar No. 292158
    jpayer@littler.com
3   LITTLER MENDELSON, P.C.
    633 West 5th Street, 63rd Floor
4   Los Angeles, CA  90071
    Tel No.:  213.443.4300 / Fax No.:  213.443.4299
5
    Attorneys for Defendants
6   KINDRED HEALTHCARE
    OPERATING, LLC, KND DEVELOPMENT 52,
7   L.L.C. d/b/a KND 52, L.L.C. (erroneously sued as
    KND 52, L.L.C.), KND DEVELOPMENT 55, L.L.C.
8   d/b/a KND 55, L.L.C. (erroneously sued as KND 55,
    L.L.C.), THC-ORANGE COUNTY, LLC,
9   BAYBERRY CARE CENTER, LLC, and
    FOOTHILL NURSING COMPANY PARTNERSHIP
10
    [*Additional counsel listed on following page*]
11
                 UNITED STATES DISTRICT COURT
12
                CENTRAL DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| MICHAEL KIRBY, LAURA KINGSTON, KEOSHA GATES, MARTHA PARRA, MICHELLE MARIE DICK, JEFFREY MONTES individually, and on behalf of other members of the general public similarly situated,<br><br>              Plaintiffs,<br><br>        v.<br><br>KINDRED HEALTHCARE OPERATING, LLC, a Delaware limited liability company; KND 52, L.L.C, a Delaware limited liability company; KND 55 L.L.C., a Delaware limited liability company; THC-ORANGE COUNTY, L.L.C., a California limited liability company; Bayberry Care Center, L.L.C., a Delaware limited liability company; Foothill Nursing Company Partnership, a California general partnership, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. 5:19-cv-00833 JLS(DFMx)<br><br>ASSIGNED FOR ALL PURPOSES TO JOSEPHINE L. STATON<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER (1) INVALIDATING PURPORTED SETTLEMENTS; (2) PROHIBITING DEFENDANTS FROM EX PARTE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS RE CLAIMS; (3) ORDERING DEFENDANTS TO SEND A CORRECTIVE NOTICE; AND (4) REQUIRING DEFENDANTS TO IDENTIFY THE CLASS MEMBERS WHO THEY HAVE CONTACTED RE: SETTLEMENT**<br><br>Complaint Filed:  May 12, 2017<br>First Amended Complaint<br>     Filed: April 5, 2019<br>(San Bernardino Superior Court) |

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

1  MAGGY M. ATHANASIOUS, Bar No. 252137
   mathanasious@littler.com
2  JYOTI MITTAL, Bar No. 288084
   jmittal@littler.com
3  LITTLER MENDELSON, P.C.
   2049 Century Park East, 5th Floor
4  Los Angeles, CA  90067.3107
   Tel No.:  310.553.0308 / Fax No.:  310.553.5583
5
   Attorneys for Defendants
6  KINDRED HEALTHCARE
   OPERATING, LLC, KND DEVELOPMENT 52,
7  L.L.C. d/b/a KND 52, L.L.C. (erroneously sued as
   KND 52, L.L.C.), KND DEVELOPMENT 55,
8  L.L.C. d/b/a KND 55, L.L.C. (erroneously sued as
   KND 55, L.L.C.), THC-ORANGE COUNTY, LLC,
9  BAYBERRY CARE CENTER, LLC, and
   FOOTHILL NURSING COMPANY
10 PARTNERSHIP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ...................................................................................7

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................9

    A.  After the State Court Rejected Plaintiff Kirby's Efforts to Invalidate Similar Individual Settlement Agreements, Plaintiffs Substantially Expanded this Litigation to Now Include Five Separate Corporate Employers and a Parent Corporation. .....................9

    B.  The Settlement Agreements and the Communications Accurately Reflect Plaintiffs' Claims, and the Releases Are Limited to the Claims That Were Brought or Could Have Been Brought Under the Same Facts in This Action. ............................................................10

    C.  Due to a Clerical Error, Plaintiff Kingston Was Inadvertently Mailed a Cover Letter and Settlement Agreement. ...............................12

    D.  Plaintiffs Did Not Meet and Confer Regarding the Substance of this Motion. ..........................................................................13

III.  DEFENDANTS' COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS WERE LAWFUL AND THE SETTLEMENT AGREEMENTS ARE ENFORCEABLE ...............................................13

    A.  Plaintiffs Provide No Legal Basis for Invalidating the Settlement Agreements.............................................................................14

        1.  Plaintiffs Do Not Have Standing To Seek Rescission of Any Settlement Agreement. ..............................................16

        2.  Plaintiffs Fail to Demonstrate that the Settlement Agreements Are Improper, Coercive, or Misleading. ................17

        3.  The Release Is Limited and Lawful, and Plaintiff's Attempts to Argue Otherwise Are Unsupported by Law or Facts. .............25

    B.  The Inadvertent Mailing to Kingston Was Not an Ethical Breach or Grounds for a Curative Notice. ............................................27

    C.  Plaintiffs Fail to Demonstrate any Grounds to Limit Defendants' Communication with the Putative Class Members or Issue a Curative Notice. ..........................................................................29

IV.  CONCLUSION .................................................................................31

LITTLER MENDELSON, P.C.
633 WEST 5TH STREET
63RD FLOOR
LOS ANGELES, CA 90071
213.443.4300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Camp v. Alexander*,
    300 F.R.D. 617 (N.D. Cal. 2014) .......................................................................... 20

*Chindarah v. Pick Up Stix, Inc.*,
    171 Cal. App. 4th 796 (2009) .................................................................. 14, 15, 26

*Cty. of Santa Clara v. Astra USA, Inc.*,
    No. C 05-03740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010)... 17, 19, 23, 24

*Edwards v. Arthur Andersen*,
    44 Cal.4th 937 (2008) ............................................................................................ 27

*Exp. Dev. Canada v. ESE Elecs. Inc.*,
    No. CV1602967BRORAOX, 2017 WL 3122157 (C.D. Cal. July 10,
    2017) ...................................................................................................................... 28

*Gonzalez v. Preferred Freezer Servs. LBF, LLC, No. CV 12-03467-ODW*
    *FMOX, 2012 WL 4466605 (C.D. Cal. Sept. 27, 2012)* ............................... 21, 22, 30

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    270 F.R.D. 509 (N.D. Cal. 2010) .......................................................................... 20

*Gulf Insurance Company v. TIG Insurance Company*,
    86 Cal. App. 4th 422 (2001) .................................................................................. 16

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ...................................................................................... 13, 14, 29

*Jafari v. Federal Deposit Insurance Corp.*,
    2015 U.S. Dist. 73988 (S.D. Cal. 2015) ................................................................ 16

*Koo v. Rubio's Restaurants, Inc.*,
    109 Cal .App. 4th 719, 736 (2003) ........................................................................ 21

*Madrigal v. Tommy Bahama Group*,
    2010 WL 4384235 (C.D. Cal. Oct. 18, 2010) ....................................................... 16

LITTLER MENDELSON, P.C.
633 WEST 5TH STREET
63RD FLOOR
LOS ANGELES, CA 90071
213.443.4300

# TABLE OF AUTHORITIES
## (continued)

Page

*Marino v. CACafe, Inc.*,
   2017 WL 1540717 (N.D. Cal. April 28, 2017) ..................................................... 19

*Meneses v. U-Haul Int'l, Inc.*,
   No. C-11-03615 DMR, 2012 WL 669518 (N.D. Cal. Feb. 29, 2012) ................... 14

*Mevorah v. Wells Fargo Home Mortgage, Inc.*,
   No. 05-CV-1175-MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)................. 19

*Michael Kirby, et al. v. KND Development, 52, LLC*, *et al.*,
   Case No. 5:19-cv-00833 JLS ................................................................................... 19

*Parris v. Sup. Court*,
   109 Cal. App. 4th 285 (2003) ........................................................................... 13, 29

*Robinson v. Chefs' Warehouse, Inc.*,
   No. 315CV05421RSKAW, 2019 WL 3220288 (N.D. Cal. July 17,
   2019) ........................................................................................................... 14, 27, 28

*Shine v. Williams-Sonoma, Inc.*,
   23 Cal. App. 5th 1070 (2018) .................................................................................. 26

*Talamantes v. PPG Indust.*,
   No. 13-CV-04062-WHO, 2014 WL 4145405 (N.D. Cal. Aug. 21,
   2014) ........................................................................................................................ 30

*Villacres v. ABM Industries, Inc.*,
   189 Cal. App. 4th 562 (2010) .................................................................................. 26

*Watkins v. Wachovia Corp.*,
   172 Cal. App. 4th 1576 (2009) ................................................................................ 14

*Wright v. Adventures Rolling Cross Country, Inc.*,
   No. 12-CV-0982-EMC, 2012 WL 2239797 (N.D. Cal. 2012)................................ 19

**Statutes**

B & P Code 17200 ...................................................................................................... 9

California's Private Attorneys General Act.............................................................. 25

# TABLE OF AUTHORITIES
## (continued)

Page

Labor Code Sections 206 and 206.5 .................................................................... 15

Labor Code Section 2802 .................................................................................... 27

**Other Authorities**

Cal. Const., Art. I, Section 2, subd. (a) ............................................................... 29

California Labor Code .......................................................................................... 21

Industrial Welfare Commission Wage Order ....................................................... 19

Local Rule 7-3 ..................................................................................................... 13

Rule 23(b)(3), Manual for Complex Litigation (Fourth) § 21.12 (2011) ............. 14

United States Constitution First Amendment ................................................. 13, 14, 29

## I.    INTRODUCTION

It is well settled that Defendants Kindred Healthcare Operating, LLC ("KHO"), KND Development 52, LLC d.b.a. KND 52, LLC ("Baldwin Park"), KND 55, LLC ("Rancho"), THC-Orange County, LLC, Bayberry Care Center, LLC, and Foothill Nursing Company Partnership have the right to communicate truthfully with putative class members, including to offer to settle, prior to certification.   Yet, recycling arguments that were already rejected by the state court in this case, Plaintiffs Michael Kirby, Laura Kingston, Keosha Gates, Martha Parra, Michelle Dick, and Jeffrey Montes' ("Plaintiffs") dispute the enforceability of individual settlement agreements between Defendants and some of the putative class members.

Plaintiffs' arguments are without merit.   Over a year ago, Plaintiff Michael Kirby unsuccessfully challenged settlement agreements reached between Baldwin Park, the original sole Defendant in this case, and some putative class members who had worked for Baldwin Park, but *the state court found that the individual settlement agreements and Baldwin Park's communications were lawful*.   After dramatically expanding the scope of this litigation to include new employers, facilities, and putative class members, Plaintiffs now bring the nearly identical motion to challenge additional settlement agreements entered into between Defendants and some putative class members. Though the agreements at issue are substantially the same agreements already approved by the state court, Plaintiffs ignore distinctions between the current communications and settlement agreements and the agreements at issue in Plaintiff Kirby's last failed state court motion, as the Rancho agreements offer more money (given the inclusion of additional more highly paid individuals in the putative class) and provide even more detail regarding Plaintiffs' claims.   Plaintiffs' arguments are no more compelling the second time around.

Conceding, as they must, that individual settlements are lawful and encouraged by California law, Plaintiffs are left to argue only that the settlement agreements are misleading because they "omit" "material" information.   As the case with their similar

motion brought before the state court, Plaintiffs do not support this position. No named Plaintiff signed a settlement agreement, so they have no standing to attack an agreement as misleading, and they have also failed to point to one putative class member who wishes to rescind a settlement agreement. Plaintiffs cite to two putative class members *who settled in 2018* (which the state court already found were lawful agreements), who claim they were confused, but even they do not seek to invalidate the agreement. Plaintiffs cite to only two other putative class members who claim they felt pressured to sign the current settlement agreements because they came from Kindred, but this argument has little weight coming from *former* employees who received documents by mail.

None of Plaintiffs' bluster changes the fact that the individual settlement agreements are not misleading. They clearly state the nature of Plaintiffs' claims, and the release is specifically limited to those claims and any claims that could have been brought based on the same facts at issue in this matter. The settlement agreements state the terms, including the lump-sum settlement amount, and the agreements themselves and the accompanying communication repeat the voluntary nature of the settlement and the fact that a decision not to sign will not result in any retaliation. They specifically state that the putative class member may consult an attorney of his or her choice, and they are provided to the recipients with ample time to consider the offer. The settlements should be enforced.

Plaintiffs' other arguments are similarly unsupported. Plaintiffs point to no law or evidence that suggests that Rancho or any of the other Defendants were coercive or otherwise acted unlawfully. In fact, *Plaintiffs* misleadingly *omit facts* from their motion demonstrating that though Plaintiff Kingston was inadvertently included on a mailing list used to send the cover letter and settlement agreement, as soon as Defendants learned of this fact, they confirmed: (1) this mailing was the only communication she received, (2) she was never contacted by Littler Mendelson or any other attorney, and (3) no other represented party had received any communications.

(Though Plaintiffs were apprised of these facts in advance of filing their ex parte application and again in Defendants' opposition to the ex parte, they still egregiously suggest that counsel for Defendants should be investigated.)   Absent evidence of improper communications, which Plaintiffs have failed to demonstrate, any limitations on Defendants' communications with unrepresented putative class members would be unconstitutional.   Plaintiffs have also failed to demonstrate any need for a "curative notice."

Plaintiffs' motion has no merit, and the Court should deny it in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   After the State Court Rejected Plaintiff Kirby's Efforts to Invalidate Similar Individual Settlement Agreements, Plaintiffs Substantially Expanded this Litigation to Now Include Five Separate Corporate Employers and a Parent Corporation.

The original Plaintiff Kirby sued his employer, Baldwin Park, in San Bernardino Superior Court almost three years ago, on May 12, 2017.  (*See* Declaration of James Payer ("Payer Decl.") ¶ 2.)  Baldwin Park and Kirby litigated for seventeen months exclusively regarding the operations at Baldwin Park. (*Id.*) While discovery was ongoing, Baldwin Park explored settlement with the individual putative class members. (*Id.*)  Thirty-eight putative class members agreed to individual settlements, and thirty-nine did not.  (*Id.*)  Though Kirby moved to invalidate the settlement agreements, claiming that the agreements and Baldwin Park's communications were misleading, the trial court disagreed.  (Doc. 1-7 at ¶ 71, Ex. OOO.)

When it became clear that Kirby could not certify a class, Kirby moved for leave to amend to add four new corporate defendants, as well as three new plaintiffs.  (Payer Decl. ¶ 3.)  After the trial court permitted the dramatic expansion of the case, Defendants removed the case to this Court on May 7, 2019.  (*Id.*; *see* Doc. 1.)  On October 31, 2019, after moving to expand the case again, Plaintiffs filed the operative Second-Amended Complaint.  (Doc. 23 ("SAC").)

Plaintiffs have sued five corporate entities, including Rancho, which own and

operate hospitals and nursing homes in California, as well as KHO, a parent company. Plaintiffs have sued Defendants on behalf of themselves and those similarly situated, alleging various wage and hour violations, including (1) unpaid overtime; (2) unpaid minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) improper wage statements and failure to maintain payroll records; (6) waiting time penalties; (7) failure to pay for split shifts; (8) failure to pay for reporting time; (9) failure to pay for unreimbursed business expenses associated with personal phones and pre-employment drug testing; and (10)/(11) unlawful and unfair business practices under B & P Code 17200. (*See* SAC.)  Plaintiffs do not allege a PAGA claim.  Plaintiffs seek to represent a class of all non-exempt, hourly paid employees in California who work in non-clinical positions, as well as Certified Nursing Assistants.  (*Id.*)

**B.**    **The Settlement Agreements and the Communications Accurately Reflect Plaintiffs' Claims, and the Releases Are Limited to the Claims That Were Brought or Could Have Been Brought Under the Same Facts in This Action.**

After being added to this litigation, Defendants explored settlement with putative class members who previously were not part of the lawsuit.  (Payer Decl. ¶ 4.)  To ensure that employees had a clear contact person for questions about the settlement offer, Defendants retained Hope Jacobson, an outside Human Resources Consultant, to answer any questions on the phone or in person.  (*Id.*)  Settlement agreements, along with an accompanying cover letter in both English and Spanish, were mailed to some current and former non-exempt, non-clinical employees at their last known addresses to offer putative class members the chance to resolve the matter individually.[1]  (*Id.* ¶ 5.)

Both the cover letters and the settlement agreements specifically reflect the claims Plaintiffs asserted in this lawsuit, summarizing the claims in everyday language in the same order they are listed in the SAC.  (*See* SAC; Payer Decl. ¶ 10, Ex. A at pp. 3, 11.)  They also detail the nature of the unreimbursed business expenses claim as

---

[1] The class lists, including the last known addresses and telephone numbers, was previously produced to Plaintiffs.  (Payer Decl. ¶ 6.)

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

10.

including the "failure to reimburse employees for the use of their personal cell phones and cell phone data to carry out job duties and the expenses related to traveling to designated clinics to undergo drug testing or physical exams at or near the time of hire." (*Id.*)

In addition, the release in the settlement agreements is specifically limited to Plaintiffs' allegations in this case and the claims that were brought or could have been brought under the same facts:

> **5.    By signing this document, I specifically acknowledge that I am waiving and releasing my right to assert the claims in the Lawsuit against KND Development, 52, LLC, its parent Kindred Healthcare Operating, LLC, formerly Kindred Healthcare Operating, Inc., any of Kindred Healthcare Operating, LLC's subsidiaries including, but not limited to, KND Development 55, LLC, THC-Orange County, LLC, Bayberry Care Center, LLC, and Foothill Nursing Company Partnership, or any other parents, subsidiaries, affiliates, divisions, agents, attorneys or employees,** specifically

> any claims for violations of the California Labor Code and the Industrial Welfare Commission Wage Order 5 for failure to pay wages (including minimum wages, straight time wages and overtime wages) for all hours worked including but not limited to any time due to rounding the actual time worked and recorded, any time worked off-the-clock, and any time not paid at the correct rate of pay;

> any claims for violations of the California Labor Code for failure to provide compliant meal and rest breaks in accordance with Labor Code sections 226.7, 512 and/or Wage Order 5;

> any claims for violations of the California Labor Code for failure to accurately pay for missed rest breaks and meal period premiums;

> any claims for violations of the California Labor Code for failure to pay all wages due at termination;

> any claims for violations of the California Labor Code for failure to timely pay all wages due during employment;

> any claims for violations of the California Labor Code for failure to pay split shift premiums in accordance with Wage Order 5;

> any claims for violations of the California Labor Code

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

for failure to provide reporting time pay in accordance with Wage Order 5;

any claims for violations of the California Labor Code for failure to maintain and provide accurate wage statements and payroll records;

any claims for violations of the California Labor Code for failure to reimburse employees for work-related expenses incurred as part of the performance of their job duties; and

any claim alleging a pattern and practice of acts of unfair competition and unfair business practice under California Business & Professions Code section 17200, *et seq*.

By execution of this Agreement, to the extent permitted by law, I am expressly waiving my rights to individual relief based on claims asserted or that could have been asserted in the Lawsuit based upon the facts pled and described above in Paragraph 5. I also acknowledge that all such individual relief (including, without limitation, claims for related penalties, injunctive relief, declaratory relief, interest, and attorneys' fees and costs) based upon the facts and allegations pled and described above in Paragraph 5 are forever barred by this Agreement regardless of the forum in which they may be brought. I acknowledge that there is a good faith dispute as to whether wages are due. I further acknowledge that upon receipt of the settlement payment described in Paragraph 1 above, I will have been paid all wages, compensation, premiums, interest and penalties owed under the claims being released by me in this Agreement.

(Payer Decl. ¶ 10, Ex. A at pp. 2-3. (emphasis in original).)

No named Plaintiff signed a settlement agreement. (*Id.* ¶ _.)

## C. Due to a Clerical Error, Plaintiff Kingston Was Inadvertently Mailed a Cover Letter and Settlement Agreement.

As further detailed in the declaration of James Payer, due to a clerical error, Plaintiff Kingston was inadvertently mailed a cover letter and settlement agreement. (Payer Decl. ¶¶ 8-10, Ex. A.)  At no point was Plaintiff Kingston or any other named Plaintiff contacted by Littler Mendelson or any other lawyer.  (*Id.* ¶¶ 9.)  As soon as Plaintiffs brought the inadvertent mailing to Kingston to Defendants' attention, Defendants promptly apprised Plaintiffs' counsel that Plaintiff Kingston received the documents as a result of a clerical error, no other communications had occurred with her and no other named Plaintiff received the documents.  (Payer Decl. ¶ 10, Ex. A.)

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

12.

Ms. Jacobson had no contact with Ms. Kingston.

### D.    Plaintiffs Did Not Meet and Confer Regarding the Substance of this Motion.

Plaintiffs filed this motion without making any attempt to meet and confer as required by Local Rule 7-3.  While Plaintiffs provided notice of their intent to appear ex parte to invalidate the settlement agreements on January 27, 2020, they made no attempt to discuss the merits of their motion at that time, merely stating their position and asking Defendants whether they would stipulate to the requested ex parte relief. (Payer Decl. ¶¶ 8, 10, Ex. A at pp. 1-2.)  After the Court denied their ex parte application and instructed Plaintiffs to file a noticed motion, Plaintiffs still made no attempt to discuss the substance of this motion.  (*Id.* ¶ 13.)  This is a particularly glaring omission given the fact that Defendants provided an explanation for the inadvertent communication with named Plaintiff Kingston before Plaintiffs' even filed the ex parte application, which Plaintiffs completely omit from their motion.  (*Id.* at ¶¶ 10, 12-13, Ex. A at p. 1.) Plaintiffs' failure to make any attempt to resolve this motion is also glaring given the state court's rejection of substantially similar arguments.

### III.    DEFENDANTS' COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS WERE LAWFUL AND THE SETTLEMENT AGREEMENTS ARE ENFORCEABLE

California and federal courts alike hold that parties are generally "free to communicate with potential class members before class certification." *Parris v. Sup. Court*, 109 Cal. App. 4th 285, 300 (2003); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981).  In *Gulf Oil Co.*, 452 U.S. 89, the Supreme Court held it would violate the First Amendment to require parties or their counsel to obtain prior judicial approval before communicating to putative class members, except to prevent serious misconduct.  Even in such a situation, "an order limiting communications between parties and potential class members should be based on a ***clear record and specific findings*** that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. (emphasis added).  Furthermore, the findings "should result in a carefully drawn order that limits speech as little as possible,

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

13.

1  consistent with the rights of the parties under the circumstances." *Id.*

2  Plaintiffs have wholly failed to meet the high standard required to invalidate the

3  Settlement Agreements and releases or to intrude into Defendants' rights under the First

4  Amendment.

5  **A.   Plaintiffs Provide No Legal Basis for Invalidating the Settlement Agreements.**

6  There is no dispute that California employers are permitted to enter into

7  settlements with individual putative class members while a putative wage and hour class

8  action is pending. *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803 (2009)[2];

9  *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1588-93 (2009); *Robinson v.*

10 *Chefs' Warehouse, Inc.*, No. 315CV05421RSKAW, 2019 WL 3220288, at *4 (N.D.

11 Cal. July 17, 2019) ("Here, Defendant has been contacting putative class members in

12 attempts to settle their individual claims and reduce the size of the potential class. ***While***

13 ***Plaintiffs would surely prefer that this not occur, the conduct is legal***.") (emphasis

14 added). Applying *Gulf Oil*, district courts in the Ninth Circuit have held a defendant can

15 initiate contact with putative class members to offer them settlements, so long as it is

16 not an "improper, coercive or misleading communication." *M.L. Stern Overtime Litig.*,

17 250 F.R.D. 492, 499 (S.D. Cal. 2008); *see also* Manual for Complex Litigation (Fourth)

18 § 21.12 (2011) ("Defendants and their counsel generally may communicate with

19 potential class members in the ordinary course of business, ***including discussing***

20 ***settlement before certification***, but may not give false, misleading, or intimidating

21 information, conceal material information, or attempt to influence the decision about

22 whether to request exclusion from a class certified under Rule 23(b)(3)") (emphasis

23 added).

24 In *Chindarah*, 171 Cal. App. 4th 796, the appellate court affirmed the trial court's

25 order that enforced settlement and release agreements signed by more than 200 putative

26

27 [2] Federal courts apply state law in interpreting settlements and releases. See *Meneses v. U-Haul Int'l, Inc.*, No. C-11-03615 DMR, 2012 WL 669518, at *5 (N.D. Cal. Feb. 29, 2012).

28

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

14.

class members.  *Id*. at 803-04.  In that case, two former employees filed a putative class action against their former employer alleging that managers, assistant managers and lead cooks were misclassified as exempt employees.  The defendant Pick Up Stix individually settled claims with as many individual putative class members as possible. More than 200 former and current employees accepted the offer and signed a settlement agreement.  The settlement agreement required that the signing employee acknowledge that he or she had spent more than 50% of his or her time performing managerial duties, released Pick Up Stix from all claims for unpaid overtime and any other California Labor Code violations during the putative class period, and agreed "not to participate in any class action that may include . . . any of the released Claims."

The California Court of Appeal rejected the plaintiffs' argument that the settlement releases were void under Labor Code sections 206 and 206.5.  *Id*. at 802-03. The court concluded that while an employee cannot waive his or her right to overtime or other wages due, wages are not "due" if there is a good faith dispute as to whether they are owed.  "[T]here is no statute providing that an employee cannot release his claim to past overtime wages as part of a settlement of a bona fide dispute over those wages."  *Id*. at 803.  Because there was a bona fide dispute over whether the wages at issue were "due," the court held the releases were enforceable and granted Pick Up Stix's motion to enforce the agreements.

Plaintiffs contend that *Chindarah* does not apply because Defendants' communications were improper.  But there was nothing coercive about the substance of the settlement agreements or the way they were presented.  As the declarants confirmed, they were mailed, and each was given multiple weeks to review the agreement, and sign it if he or she desired.  Both the cover letter and the settlement agreement detailed the claims asserted by Plaintiffs in a fair and accurate manner.[3]  (Payer Decl. ¶ 10, Ex. A at

---

[3] In fact, Plaintiffs' counsel has a website that advertises this lawsuit, and it describes the claims in less detail than the Cover Letters and Settlement Agreements do.  (*See* Payer Decl. ¶ 7, Ex. B.) Notably, it does not include Littler's contact information.  (*Id.*)

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

15.

pp. 3, 11.)  In addition to explaining the nature of Plaintiffs' claims, the settlement agreement also explained sources for additional information, and specifically stated that the employee could consult with counsel.  (*Id.* at pp. 3, 5.)  In addition, both documents repeated that entering into the settlement agreement was voluntary, and Defendants made it clear that signing or not signing the agreements would have no bearing on the employee's employment rights.  (*Id.* at pp. 3, 5, 11-12.)

Despite these safeguards, Plaintiffs now claim that the agreements are invalid. These arguments lack factual and legal support.

### 1. Plaintiffs Do Not Have Standing To Seek Rescission of Any Settlement Agreement.

As a preliminary matter, no Plaintiff is a party to any of the settlement agreements they seek to invalidate, and they do not have standing to seek rescission of agreements on behalf of the proposed class members.  *See Madrigal v. Tommy Bahama Group*, 2010 WL 4384235 (C.D. Cal. Oct. 18, 2010).  The long-standing general rule of law is that only parties to a contract may sue to enforce or invalidate that contract.  *See e.g. Gulf Insurance Company v. TIG Insurance Company*, 86 Cal. App. 4th 422, 429-30 (2001); *Jafari v. Federal Deposit Insurance Corp.*, 2015 U.S. Dist. 73988 (S.D. Cal. 2015) ("Only a party to a contract or an intended third-part beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach.").  Third parties who are not the intended beneficiaries of a contract also have no standing to sue on that contract.  *Gulf Insurance Company*, 86 Cal.App.4th at 430.

In *Madrigal*, plaintiffs filed a putative class action against their employer for unpaid wages.  Plaintiffs asserted that the defendant violated the Labor Code when it obtained releases from other class members, and on that basis sought to invalidate the releases.  The court held that since the named plaintiffs had not alleged that they personally and/or in individually signed any waiver or release of claims for unpaid earned wages, they lacked standing to challenge the releases on behalf of absent third party class members.  *Madrigal*, 2010 WL 4384235 at *3-4.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

16.

Plaintiffs have also failed to identify even a single individual who wishes to rescind the agreement he or she signed.  Plaintiffs do not have standing to challenge the settlement agreements.

### 2. Plaintiffs Fail to Demonstrate that the Settlement Agreements Are Improper, Coercive, or Misleading.

Plaintiffs do not argue that the settlement agreements contain misinformation or affirmatively misrepresent Plaintiffs' claims or the nature of the law suit.  Instead, Plaintiffs contend that that the communications are misleading because they "omit critical information" about Plaintiffs' claims.  Specifically, Plaintiffs argue the settlement agreements should be invalidated because they fail (1) to attach a copy of the complaint; (2) to describe the nature of each of the claims at issue; (3) to provide the status of the pending class action; (4) identify the value of each class member's claim or explain how it was calculated; and (5) describe the basis for offering a $350 settlement amount to all class members.  This "standard" is unsupported by law, and Plaintiffs' argument that the settlement agreements are misleading is affirmatively contradicted by the facts.

### a. The Settlement Agreements Clearly Identify the Pending Class Action and State the Nature of the Claims.

First, there is no requirement that the Complaint must be attached to the Settlement Agreement.  *See Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010). Instead, the Settlement Agreement must make clear the nature of Plaintiffs' claims, so that the putative class member can make a decision about whether or not to sign the release. *See id.*  There is no dispute that this one does.

The Settlement Agreement specifically states that a former employee has brought a lawsuit and describes each asserted claim in plain language:

> KND Development 55, LLC's former employee Laura Kingston is a plaintiff in a lawsuit that has been filed against Kindred entitled Michael Kirby, et al. v. KND Development, 52, LLC, et al., Case No. 5:19-cv-00833 JLS (DFMx) (the "Lawsuit").  A copy of the operative Complaint can be

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

obtained from the Ronald Reagan Federal Building and United States Courthouse located at 411 WE. Fourth St., Santa Ana, CA 92701.

The Lawsuit alleges that Kindred committed violations of the California Labor Code, including unpaid overtime and wages, failure to provide compliant meal breaks and/or rest periods, failure to pay premiums for split shifts, meal breaks and/or rest periods, non-compliant wage statements, failure to provide reporting time pay, failure to pay all wages due at termination, and failure to reimburse employees for the use of their personal cell phones and cell phone data to carry out job duties and the expenses related to traveling to designated clinics to undergo drug testing or physical exams at or near the time of hire. The Plaintiff seeks to represent all persons who worked for Kindred as non-exempt, hourly-paid employees in California (excluding clinicians and piece-rate paid employees) or as Certified Nursing Assistants ("CNA") since May 12, 2013. As a non-exempt California employee or CNA who works or has worked in a non-clinical position for Kindred during this period, I fall within the definition of this proposed class. I understand that the court has not ruled on the issue of whether this case can proceed on a class action basis and that no class has been certified in the Lawsuit to date.

(Payer Decl. ¶ 10, Ex. A at p. 3.) The nature of the claims is reiterated in the cover letter. (*Id.*) The settlement agreement also provides the full title of the lawsuit, the case number, and where the employee may get a copy of the complaint. (*Id.*) The settlement agreement clearly states that the employee falls within the definition of the class; this too is echoed in the cover letter. ((*Id.* ("The Plaintiff seeks to represent all persons who worked for Kindred as non-exempt, hourly-paid employees in California (excluding clinicians and piece-rate paid employees) or as Certified Nursing Assistants ("CNA") since May 12, 2013. As a non-exempt California employee or CNA who works or has worked in a non-clinical position for Kindred during this period, I fall within the definition of this proposed class. I understand that the court has not ruled on the issue of whether this case can proceed on a class action basis and that no class has been certified in the Lawsuit to date."); *see also id.* at p. 11 ("In the Lawsuit, the Plaintiffs are seeking to represent groups of individuals who worked for Kindred as non-exempt, hourly-paid employees in California (excluding clinicians and piece-rate paid employees) or as Certified Nursing Assistants ("CNA") since May 12, 2013. You may

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

18.

fall within one of these groups.  In the Lawsuit, Plaintiffs allege violations of the California Labor Code and the Industrial Welfare Commission Wage Order, including for unpaid overtime and wages, failure to provide compliant meal breaks and/or rest periods, failure to pay premiums for split shifts, meal breaks, and/or rest periods, non-compliant wage statements, failure to provide reporting time pay, failure to pay all wages due at termination, and failure to reimburse employees for the use of their personal cell phones and cell phone data to carry out job duties, the expenses related to traveling to designated clinics to undergo drug testing at or near the time of hire, or other work-related expenses.  A copy of the operative Complaint for the Lawsuit, which is entitled *Michael Kirby, et al. v. KND Development, 52, LLC, et al.*, Case No. 5:19-cv-00833 JLS (DFMx), can be obtained from the Ronald Reagan Federal Building and United States Courthouse located at 411 WE. Fourth St., Santa Ana, CA 92701.").)

Plaintiffs do not and cannot contend that this description of the claims and putative class is inaccurate or misleading, and none of their cases support such an argument.  Plaintiffs' cited cases include factual scenarios where the defendants either did not mention a pending action at all or mentioned it without a complete description of the claims.  *See Astra USA, Inc*., 2010 WL 2724512, at *4 (invalidating an accord and satisfaction which precluded participation in a class action where the letter accompanying the check only included the name of the case and an explanation that it was a putative class action); *Marino v. CACafe, Inc.*, 2017 WL 1540717, at *2 (N.D. Cal. April 28, 2017) (invalidating releases when putative class members were not informed of the pending action, the nature of the claims that had been advanced on their behalf, or any other information that might have allowed them to make an informed decision about the proposed waivers of their rights); *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-CV-0982-EMC, 2012 WL 2239797, at *5 (N.D. Cal. 2012) (communication presented skewed view of litigation for purpose of discouraging participation); *Mevorah v. Wells Fargo Home Mortgage, Inc.*, No. 05-CV-1175-MHP, 2005 WL 4813532, at *4 (N.D. Cal. Nov. 17, 2005) (communication by defense counsel

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

19.

directly gave incorrect impression that compensation structure would change if lawsuit was successful).

Here, to the contrary, the pending action was clearly stated by title, case number, and court, and both the Settlement Agreement and the cover letter provided a straightforward summary of the specific claims asserted.  In addition, the Settlement Agreement identifies the complaint and explained where to find more information.  Plaintiffs do not explain what more should be required.[4]

Other cases cited by Plaintiffs are inapposite because the releases were secured during required in-person meetings or other coercive circumstances.  *See Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (invalidating opt-out declarations where employer engaged in ex parte communications with employees essentially threatening that they would lose their jobs if the lawsuit were successful); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 512 (N.D. Cal. 2010) (invalidating opt-outs where "Defendants admit that they presented opt-out forms to [to putative class members] during required, one-on-one meetings with managers during work hours and at the workplace").

Here, there were no coercive circumstances.  Not only did the Settlement Agreements clearly state the nature of the pending claims, the vast majority were sent by mail, where the putative class members could review them in the privacy of their own homes before deciding whether to sign or not.  In some instances, employees were offered the agreements during entirely voluntary one-on-one meetings with a third party HR consultant.  Like the mailed agreements, the employees were not pressured to sign and could take them home to review.  In most cases, putative class members were given at least 30 days to review, and the Agreements specifically provided that they could be reviewed by counsel of their choice.  Plaintiffs' argument that the communications were

---

[4] Plaintiffs' suggestion that the use of the terms "wage statement," "split shift" or "reporting time" are misleading is not persuasive, particularly since Plaintiffs' advertisement uses the same terms.  (Payer Decl. ¶ 7, Ex. B.)

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

20.

coercive merely because they were from an employer is not supported by the law, particularly where, as here, the Agreements specifically stated that no putative class member would be retaliated against for deciding not to sign.  In addition, Plaintiffs make no effort to explain how communications from a former employer would be coercive.

Plaintiffs also suggest that Defendants erred by not providing Plaintiffs' counsel's contact information, but this too is incorrect.  Because a class is not yet certified, the putative class members are not represented by Plaintiffs' counsel.  *See, e.g.*, *Koo v. Rubio's Restaurants, Inc.*, 109 Cal .App. 4th 719, 736 (2003) (holding that fact that action allegedly filed for the benefit of a proposed class "does not mean, however, that potential class members are deemed parties represented by class counsel, within the meaning of rule 2-100, before class certification").  In fact, Defendants made sure that the putative class members knew they were free to consult with *any* counsel: "I am entering into this Agreement freely and voluntarily after having been advised of *my right to consult with an attorney of my choice*."[5]   (Payer Decl. ¶ 10, Ex. A.) (emphasis added).)

Defendants were similarly under no requirement to provide advance notice of the Settlement Agreements to Plaintiffs' counsel.  The only case Plaintiffs cite to support this proposition, *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, No. CV 12-03467-ODW FMOX, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012), involved an egregiously bare "Release Agreement" that defendant provided to its employees after a collective action had been filed against it.  The Release explained that in exchange for a settlement payment "in full satisfaction of all claims that Employee has, had or could have had arising out of the lawsuit or in any way related thereto," the employee waived any and all claims arising out of a "former employee['s]" wage-and-hour lawsuit or in any way related to the lawsuit."  *Id.*  But the Release Agreement did not name the

---

[5] In addition, Plaintiff's counsel testified that "many" putative class members contacted her with questions about the settlement agreements.  (Grant Decl. ¶ 3.)  This is additional evidence that the settlement agreement sufficiently informed the putative class of the nature of the dispute.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

21.

lawsuit or the former employee, when this lawsuit was filed, or even explain the period of time covered by the release. (*Id.*)  This case does not stand for the proposition that a defendant must provide advance notice of communications to a plaintiff, and it is inapposite here.

> **b.     The Settlement Agreements Explain the Procedural Posture of the Case, Including the Fact that No Class Has Been Certified.**

The Settlement Agreement also explains the procedural posture of the case, which is reiterated in the cover letter.  (Payer Decl. ¶ 10, Ex. A at p. 3 ("I understand that the court has not ruled on the issue of whether this case can proceed on a class action basis and that no class has been certified in the Lawsuit to date."); *see also id.* at p. 11 (stating that the lawsuit is pending, and the "lawsuit has not been 'certified' as a class action").)

In the face of this clear and accurate statement regarding the procedural posture of the case, Plaintiffs' suggestion that the failure to indicate that the class certification hearing would be in April 2020 was misleading is unsupported. The Settlement Agreements were distributed in December 2019, and there were and have been no rulings on the case that affect the value of the claims since then.

> **c.     The Settlement Agreements Clearly State the Settlement Offer and the Fact that Putative Class Members Might Recover More or Less if They Stay in the Litigation.**

Both documents also clearly state that the settlement amount is $350.  Though Defendants contend Plaintiffs' claims are without merit and no putative class member has been harmed, the letter and settlement agreement transparently state that Defendants do not know whether the case will settle or be resolved in Plaintiffs' favor, and $350 could be more or less than what the putative class members could recover.  (*Id.* ¶ 10, Ex. A at p. 11 ("We cannot tell you whether the amount of this settlement offer will turn out to be more or less than what you might receive if you wait for the case to be resolved."); *see also id.* at p. 4 ("I understand that, at some point in the future, Kindred

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

and the Plaintiff may or may not enter into a class-wide settlement of the Lawsuit and that the Court may or may not give approval to that class-wide settlement. Any such class-wide settlement could result in a settlement formula that provides more money to me or it could result in a settlement formula that provides less money to me. By agreeing to this Settlement and Release I would be foregoing the right to participate as a class member in the Lawsuit, including participating in any class-wide Settlement.").

There is no requirement that Defendants explain how they arrived at the $350 settlement amount, and Plaintiffs do not cite a case that suggests otherwise. For instance, in *Astra USA, Inc.*, 2010 WL 2724512, the company sent checks to its customers accompanied by a letter that explained the money was a refund for overcharged drugs and acceptance of the refund constituted an accord and satisfaction for any future claims. *Id.* at *1. The court found the letter was inadequate to sufficiently inform the putative class because it omitted a summary of the plaintiffs' complaint, it did not provide an explanation of the plaintiffs' claims, and it misled about the current status of the case, including that the court of appeals had already vetted and approved the theory of the case. *Id.* at *4. The court also found that the letter affirmatively misled the customers about the calculation of the refunds, failing to explain the defendant used a calculation method that resulted in much lower refunds than another calculation method. *Id.* This misrepresentation, coupled with others, misled the plaintiffs regarding the potential strength and extent of the plaintiffs' claims. *Id.* at *5.

Thus, *Astra USA* does not require that a defendant explain the calculations or business decisions underlying its settlement offer; rather, it requires that a putative class member be given straightforward information to make a choice about whether to accept the settlement agreement. This is what Defendants did. Unlike in *Astra USA*, where the settlement amounts to each putative class member were tied to overcharges, the stated method of calculation of which was misleading, here, Defendants offered a lump sum to each putative class member to settle what Defendants contend are meritless claims. There were no misrepresentations here. Defendants have not omitted any

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

23.

1   rulings that might suggest that Plaintiffs' claims have merit because there are none.

2   Defendants explained the nature of Plaintiffs' claims, the status of the case, the lump

3   sum offer of $350, and the fact that continued litigation could result in a higher or lower

4   amount.  This is sufficient.

### d.   Plaintiffs Provide No Credible Evidence that Any Putative Class Member Was Misled.

Plaintiffs cite no case that supports an argument that the settlement agreements in this case are misleading, and they produce no competent evidence that anyone was misled either.  Plaintiffs rely heavily on a declaration from their counsel, which states that "several putative class members" have stated that they felt pressured or confused by the offered settlement agreements, including whether they "could (and should)" contact Plaintiffs' counsel.  (*See* Grant Decl. ¶ 3.)  This statement is contradicted by the earlier sentence that several putative class members *did* contact Plaintiffs' counsel with questions, but even more egregiously, it is inadmissible hearsay.  (*See id.*)

Plaintiffs submit testimony from four employees they claim were confused or felt pressured by the settlement agreements.  Plaintiff submitted Francisco Gomez's declaration in support of its 2018 Motion, and the trial court found the settlement agreement and those communications to be lawful. Jaidy Sanchez' declaration is likewise dated September 2018, but it was not filed in support of that Motion.  Both Gomez and Sanchez state that they felt "pressured" to sign the settlement agreement because it came from their "employer," even though both admit they had not worked for Baldwin Park for years.

Similarly, the declarations of Barbara Lopez and Celena Ramirez state that they felt pressure to sign because the offers were from their former employer, but they do not explain why a letter in the mail was coercive, especially since they no longer worked for Defendants.

Regardless, the fact that these declarants were confused or felt "pressure" is not evidence that the settlement agreements are misleading or false.  The cover letters

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

24.

clearly stated that they are from Defendants, and they dispute the claims, but also recognize the high cost of litigation, so they are offering to settle any individual claims. The settlement agreements also made clear that the future of the lawsuit is uncertain, and an individual who stays in the lawsuit could result in more or less than the settlement amount.  The cover letters specifically provided the telephone number of Ms. Jacobson if anyone had any questions, and the settlement agreements specifically advised the putative class members of their right to consult *any* counsel.   Most importantly, both documents reiterated that participation in the settlement was voluntary, and neither participation nor the failure to participate would result in retaliation.

Significantly, despite these declarants claims of confusion, *none* of them request rescission of the settlement agreement.  None offer to return the money.  Thus, even these declarations do not support Plaintiffs' request to invalidate the settlement agreements.

### 3. The Release Is Limited and Lawful, and Plaintiff's Attempts to Argue Otherwise Are Unsupported by Law or Facts.

Plaintiffs also claim that the release is overbroad and misleading.  This argument is unavailing.  Here, the release is not broad; it is specifically limited to "claims asserted or that could have been asserted in the Lawsuit based upon the facts pled." (Payer Decl. ¶ 10, Ex. A at p. 5; *see also id.* ("This Agreement does not constitute a waiver or release of any individual claim I have or may have against Kindred other than those claims asserted in the pending Lawsuit and enumerated above under Paragraph 5.")  This complies with California law, and Plaintiffs' arguments to the contrary are not supported.[6]

---

[6] Defendants note that Plaintiffs do not assert a claim for civil penalties under California's Private Attorneys General Act ("PAGA"), and relatedly they do not allege that they have provided notice to the LWDA, a necessary preliminary requirement to bringing a representative claim under PAGA.  Thus, the release does not cover a pending representative PAGA claim, which would require court approval.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

25.

The law is clear that individuals may release their claims to alleged past violations of the Labor Code in consideration for compensation for doing so. *Villacres v. ABM Industries, Inc.*, 189 Cal. App. 4th 562, 591 (2010). Moreover, a release of wage claims that encompasses claims that could have been raised in the previous action is lawful. *See id.* at 584-85 (citing cases in which subsequent actions for additional wages were barred under doctrine of res judicata). A release can bar subsequent claims "based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented,* and could not have been presented, in the class action itself." *Shine v. Williams-Sonoma, Inc.*, 23 Cal. App. 5th 1070, 1078 (2018).

In accordance with California law, the release was specifically limited to claims that were alleged or could have been alleged. Plaintiffs' arguments to the contrary fail.

### a.    Disputed Claims for Wages May Be Released.

Plaintiffs do not dispute that California law permits employers to settle Labor Code claims where there is a bona fide dispute as to any monies owed, including wages. *Chindarah*, 171 Cal. App. 4th at 803. There is no public policy precluding settlements of alleged violations of wage and hour laws where a good faith dispute exists as to the claims on past wages and the employer is not exonerated from any future violations. *Id*.

Here, the settlement agreements specifically state that Defendants dispute that they are liable for any unpaid wages. (Payer Decl. ¶ 10, Ex. A at p. 2 ("This Agreement is not an admission of liability by Kindred and should not be construed as such."); *see also id.* at Ex. A at p. 11 ("Kindred disputes the claims and does not believe that it violated any laws.")). The Settlement Agreement also does not purport to release any claims to future violations. (*See id*. at pp. 2-3.) Thus, under *Chindarah*, the settlement agreements are valid and enforceable.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

26.

### b. Disputed Claims for Unreimbursed Business Expenses May Be Released.

For the same reason, Plaintiffs' argument that an employee may not release a claim for unpaid business expenses is incorrect. Plaintiffs' citation to *Edwards v. Arthur Andersen*, 44 Cal.4th 937 (2008) is unhelpful because that case stands for the proposition that a provision in a non-compete agreement that required the employee to waive a potential claim for unreimbursed business expenses was enforceable. *Id.* at 952-53. It does not stand for the proposition that individuals may not settle claims they may have against an employer for consideration. Here, putative class members did not **waive** the right to bring a claim for unreimbursed business expenses; they **settled** any Labor Code section 2802 claim as well as the other claims alleged in Plaintiffs' Complaint in dispute in exchange for $350.

### B. The Inadvertent Mailing to Kingston Was Not an Ethical Breach or Grounds for a Curative Notice.

As Defendants made clear to Plaintiffs before they filed their ex parte application in January, again in their opposition to the ex parte, and as described in more detail in the Payer Declaration, due to a clerical error, Kingston was sent a Cover Letter and Settlement Agreement, despite the fact that Defendants' counsel took pains to ensure that no represented party was included on the mailing list. (Payer Decl. ¶¶ 7-10, Ex. A.) This was not a breach of Defendants' counsel's ethical obligations, and as a district court recently confirmed, it is also certainly not grounds to order no contact with the putative class.

In *Robinson v. Chefs' Warehouse, Inc.*, No. 315CV05421RSKAW, 2019 WL 3220288 (N.D. Cal. July 17, 2019), the defendant engaged a contract attorney to help offer to individually settle with the putative class members. The defendant took steps to ensure that represented parties were not contracted, but the contract attorney inadvertently called a named plaintiff and discussed settlement with her. *Id.* at *4. Though the initial call was made in error, during the conversation, the named plaintiff claimed she was not represented by counsel. *Id.* The court found that this inadvertent

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

27.

contact was insufficient for the "extreme remedy" of a "no contact" order for several reasons. *Id.* First, the defendant's contact of the putative class members to offer to settle was legal. *Id.* Second, the defendant had a procedure in place to ensure that no represented party was contacted, and it took further steps to ensure that a represented party would not be inadvertently called again. *Id.* Finally, had the named plaintiff answered truthfully that she was represented, the contract attorney would have ended the call. *Id.*

This reasoning should apply here with even more force. Here, unlike in *Robinson*, where the named plaintiff was contacted by a lawyer over the telephone, ***Kingston was never contacted by Littler or any other attorney***, and the inadvertent settlement communication was sent through the mail. Moreover, Defendants had procedures in place to ensure that no represented party was contacted, and except for Kingston, they have been effective. (Payer Decl. ¶ 7.) For instance, Plaintiff Kirby was never sent a settlement agreement or letter. (*Id.*) After Defendants learned that Kingston was inadvertently mailed a letter, they took steps to ensure that it would never happen again. (*Id.* at ¶ 10, Ex. A.)

Though Plaintiffs knew before they filed their ex parte that (a) Ms. Kingston was sent a mailing in error; and (b) no attorney contacted Ms. Kingston directly, they wholly omitted these facts, as well as the fact that Defendants have preventative measures in place to ensure that no represented party is inadvertently contacted, from their ex parte and from this motion, suggesting instead that the contact was intentional and calling instead for an "investigation." (Payer Decl. ¶¶ 10, 12-13, Ex. A.) Relying only on the bare Rule of Professional Conduct prohibiting contact with a represented party, Plaintiffs have cited no case to suggest there was a breach of ethics when a represented party was inadvertently contacted by mail by a third-party. *Cf. Robinson*, 2019 WL 3220288, at *4 (finding "no apparent harm" by counsel's inadvertent contact with represented party and refusing calls for disqualification). Plaintiffs' suggestion otherwise is unsupported by law and facts, and it should be disregarded. *Cf Exp. Dev.*

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

28.

1   *Canada v. ESE Elecs. Inc.*, No. CV1602967BRORAOX, 2017 WL 3122157, at *3

2   (C.D. Cal. July 10, 2017) (noting that motions to disqualify attorneys for ethical

3   violations "are often tactically motivated").

**C.    Plaintiffs Fail to Demonstrate any Grounds to Limit Defendants'
        Communication with the Putative Class Members or Issue a Curative
        Notice.**

6       The First Amendment to the United States Constitution prohibits any law

7   "abridging the freedom of speech."  U.S. Const., 1st Am.  In addition, the freedom of

8   speech clause of the California Constitution provides:  "Every person may freely speak,

9   write and publish his or her sentiments, on all subjects, being responsible for the abuse

10  of this right. A law may not restrain or abridge liberty of speech or press."  Cal. Const.,

11  Art. I, § 2, subd. (a).

12      Indeed, California and federal courts alike hold that parties are generally "free to

13  communicate with potential class members before class certification."  *Parris v. Sup.

14  Court*, 109 Cal. App. 4th 285, 300 (2003); *see also Gulf Oil Co.*, 452 U.S. 89, 101–02.

15  The seminal case regarding permissible communications with putative class members

16  is *Gulf Oil*.  In that case, the Court indicated that pre-certification communications with

17  putative class members generally must be permitted.  *See Gulf Oil*, 452 U.S. at 100.  An

18  order preventing counsel from communicating with putative class members about the

19  case "involved serious restraints on expression."  *Id.* at 104.  The Court held that it is

20  impermissible to limit communications between parties and potential class members

21  unless there is "a clear record and specific findings that reflect a weighing of the need

22  for a limitation and the potential interference with the rights of the parties."  *Id.*  The

23  Court emphasized that a trial court cannot issue an order prohibiting communication

24  between putative class members and counsel based on the mere possibility of abuse.  *Id.*

25  at 100.

26      Here, as Plaintiffs acknowledge, no class has been certified, and Plaintiffs present

27  no evidence of any improper communication with proposed class members.  In fact,

28  Plaintiffs do not argue that they have been prejudiced or harmed by the communication

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

29.

from Defendants.  Plaintiffs also fail to show how continued contact with the putative class members is prejudicial to the non-existent "class."  Plaintiffs have not identified any putative class member who seeks to invalidate a settlement agreement.  Indeed, if putative class members did not want to settle their claims, they could merely decline to sign the agreements, as many have.  Plaintiffs' request to limit Defendants' communications with the putative class should be denied.

Because Plaintiffs have failed to demonstrate that Defendants' communications are improper, there are no grounds to order Defendants to issue a "curative notice."  Defendants complied with the law and made the required disclosures in its communications with the putative class members.  As discussed in detail above, the putative class members were informed of the lawsuit and the specific claims at issue when they were offered the settlement, both in the cover letter and in the Settlement Agreement itself.  They knew that signing the Settlement Agreement released their claims against Defendants in the lawsuit.  They were free to consult with counsel of their choice if they had any questions, or ignore the Settlement Agreement completely.

Plaintiffs have no credible evidence that Defendants engaged in any wrongdoing.  No putative class member was pressured or coerced to sign a Settlement Agreement.  Nor did Defendants mischaracterize the action. To the extent the declarations submitted by Plaintiffs contend otherwise, they are rendered utterly unbelievable by the surrounding circumstances, as outlined above.  There is no reason for this Court to issue a corrective notice.[7]  *See Talamantes v. PPG Indust.*, No. 13-CV-04062-WHO, 2014 WL 4145405, at *3-5 (N.D. Cal. Aug. 21, 2014) (denying plaintiff's motion for

---

[7] Plaintiffs' request for an order "compelling the production of information regarding which employees were contacted" must be denied on the same grounds.  As discussed above, *Gonzalez* , 2012 WL 4466605, at *3, the only case cited for this proposition is inapposite since the communication in that case was bare bones without identifying the pending action or anyway to discern information about it.  In that case, the employer apparently sent misleading releases to all employees, so the plaintiff sought names, addresses, and telephone numbers for all of the employees who received a release.  Here, Plaintiffs already have contact information for the putative class members, and any further narrowing of who Defendants communicated with would intrude on the attorney work-product doctrine.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

corrective notice because the communication did not mischaracterize the lawsuit, threaten retaliation or otherwise undermine Court-approved notice).

## IV.   CONCLUSION

Therefore, Defendants respectfully request that Plaintiffs' motion be denied in its entirety and that the individuals' settlement agreements be given full force and effect.

Dated:  April 3, 2020                         Respectfully Submitted,


                                              */s/ Maggy Athanasious*
                                              ELIZABETH STAGGS WILSON,
                                              MAGGY ATHANASIOUS
                                              JYOTI MITTAL
                                              JAMES PAYER
                                              LITTLER MENDELSON, P.C.
                                              Attorneys for Defendants

4816-3352-4665.1 091140.1002

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308