Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Robert Drexler (SBN 119119)
Robert.Drexler@Capstonelawyers.com
Molly A. DeSario (SBN 230763)
Molly.DeSario@Capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Attorneys for Plaintiffs Michael Kirby,
Laura Kingston, Keosha Gates,
Martha Parra, Michelle Marie Dick,
and Jeffrey Montes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KIRBY, LAURA KINGSTON, KEOSHA GATES, MARTHA PARRA, MICHELLE MARIE DICK, JEFFREY MONTES, individually, and on behalf of other members of the general public similarly situated,<br><br>          Plaintiffs,<br><br>          vs.<br><br>KINDRED HEALTHCARE OPERATING, LLC, a Delaware limited liability company; KND 52, L.L.C., a Delaware limited liability company; KND 55, L.L.C., a Delaware limited liability company; THC - ORANGE COUNTY, LLC, a California limited liability company; Bayberry Care Center, L.L.C., a Delaware limited liability company; Foothill Nursing Company Partnership, a California general partnership; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: 5:19-cv-00833-JLS-DFM<br><br>Assigned to Hon. Josephine L. Staton<br><br>**PLAINTIFFS'REPLY TO OPPOSITION TO MOTION FOR ORDER (1) INVALIDATING PURPORTED SETTLEMENTS; (2) PROHIBITING DEFENDANTS FROM FURTHER *EX PARTE* COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS RE CLAIMS;(3) ORDERING DEFENDANTS TO SEND A CORRECTIVE NOTICE; AND (4) REQUIRING DEFENDANTS TO IDENTIFY THE CLASS MEMBERS WHO THEY HAVE CONTACTED RE: SETTLEMENT**<br><br>Date:  April 24, 2020<br>Time:  10:30 a.m.<br>Place: Courtroom 10A<br><br>Complaint Filed: May 12, 2017 |

Pl

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT ..........................................................................................2

    A.   Defendants' Settlement Communications with Putative
         Class Members are Misleading and Per Se Improper ...................2

       1.   Defendants' Communications Failed to Provide the Complaint ..2

       2.   Defendants' Communications Did Not Describe the Nature of
            Plaintiffs' Claims ........................................................................4

       3.   Defendants' Communications Failed to Provide the Identity
            and Contact Information of Plaintiffs' Counsel ...........................7

       4.   Defendants' Communications Failed to Provide the Material
            Status of the Class Action ...........................................................9

       5.   Defendants' Communications Fail to Identify the Value of
            Class Members' Claims or Explain How Would Be Calculated 10

       6.   Defendants' Communications Fail to Explain the Basis of the
            Settlement Offer .......................................................................10

       7.   Defendants' Communications are False, Misleading, and
            Coercive ....................................................................................11

       8.   Defendants' Proposed Release Is Overbroad ............................12

    B.   Defendants' Procedural Objections Are Without Merit ..............14

       1.   There Are No Standing Issues Precluding The Invalidation Of
            Defendants' Settlement Agreements ..........................................14

       2.   *Pick-Up Stix* Authority Is Not At Issue Here ............................15

       3.   Plaintiffs Satisfied L.R. 7-3's Meet And Confer Requirement ..15

       4.   The State Court Did Not Previously Find Defendants'
            Settlement Communications Lawful ...........................................15

    C.   Court Intervention Is Required To Protect the Integrity of

the Class Action Mechanism and the Interests of the

Putative Class ................................................................ 16

    1.   Defendants' Solicitation of a Named Plaintiff Demonstrates

The Need For Judicial Oversight to Protect the Integrity of

the Class ................................................................ 16

III.   CONCLUSION ................................................................ 16

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION RE IMPROPER CLASS MEMBER COMMUNICATIONS

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) ................................. passim

*County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA,
      2010 WL 2724512 (N.D. Cal. July 8, 2010) ........................................... passim

*Eshelman v. Othoclear Holdings, Inc.*, No. C 07-01429 JSW,
      2007 WL 2572349 (N.D. Cal. Sep. 4, 2007)...................................................... 8

*Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509
      (N.D. Cal. 2010) .................................................................................... 11, 12

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) .................................................. 1, 14

*In Re M.L. Stern Overtime Litigation*, 250 F.R.D. 492 (S.D. Cal. 2008) ............. 8

*Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (1985).................... 7, 9, 11

*Kutzman v. Derrel's Mini Storage, Inc.*, 354 F.Supp.3d 1149
      (E.D. Cal. 2018)....................................................................................... passim

*Madrigal v. Tommy Bahama Group*, No. CV 09-08924 SJO (MANx),
      2010 WL 4384235 (C.D. Cal. Oct. 18, 2010) ............................................... 14

*Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 WL 1540717
      (N.D. Cal. Apr. 28, 2017) ............................................................................... 8

*O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC,
      2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ..................................... 1, 7, 9, 12

*Romero v. May Trucking Company*, No. EDCV 17-2406 JGB (SHKx),
      2018 WL 5905604 (C.D. Cal. Mar. 15, 2018) ................................................. 8

*Slavkov v. Fast Water Heater I, LP*, 2015 WL 6674575
      (N.D. Cal. Nov. 2, 2015)................................................................. 7, 8, 14, 15

**CALIFORNIA CASES**

*Chindarah v. Pick-Up Stix, Inc.* 171 Cal.App.4th 796 (2009)........................... 15

*Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719 (2003) ........................ 8

## I.    INTRODUCTION

The Supreme Court in *Gulf Oil Co. v. Bernard* stated that "[b]ecause of the potential for abuse [of the class action process], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." 452 U.S. 89, 100 (1981). Under *Gulf Oil*, adistrict court has authority to prevent misleading communications to putative class members, and communications that would "undermine Rule 23 by encouraging class members not to join the suit." *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) (citation omitted).

Here, Plaintiffs Michael Kirby, Laura Kingston, Keosha Gates, and Martha Parra ("Plaintiffs") filed their Motion Re: Improper Class Member Communications because Defendants Kindred Healthcare Operating, LLC, KND 52, L.L.C., KND 55, L.L.C., THC – Orange County, LLC, Bayberry Care Center, L.L.C., and Foothill Nursing Company Partnership ("Defendants") have engaged, and continue to engage, in misleading and inherently coercivesettlement communications with prospective class members.  If the Court agrees, Plaintiffs request appropriate relief to protect the integrity of the class action mechanism and the interests of putative class members.[1]

///

///

///

---

[1]Specifically, Plaintiffs' seek an an Order: (1) invalidating all purported settlement agreements and releases of the claims at issue in this case between putative class members and the Defendants; (2) prohibiting Defendants from any further misleading communications with putative class members regarding the claims at issue in this case, including any further attempts to settle the claims at issue in this case with putative class members; (3) ordering Defendants to send, at their expense, a court-approved curative notice to all putative class members; and (4) ordering Defendants to produce the identities and contact information for all putative class members to whom they have sent settlement communications.

## II.    ARGUMENT

### A.    Defendants' Settlement Communications with Putative Class Members are Misleading and Per Se Improper

#### 1.    Defendants' Communications Failed to Provide the Complaint

"[P]utative class members can be misled through omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, *3 (N.D. Cal. July 8, 2010).  Defendants do not dispute this fact.Instead, they tacitly admit that having a copy of the complaint is essential to making an informed decision whether to accept the offer by tellingputative class members who worked at Defendants' Baldwin Hills facility that they can get a copy of itby going to the San Bernardino Superior Court courthouseandthose who worked at other facilities that they could get a copy by going tothe Central District's courthouse in Santa Ana.[2]Such a statement amounts to nothing more than lip servicein that it is actually likely to ensure that putative class members willhave no way to assess the claims at issue on an independent and neutral basis before deciding to accept or reject the settlement offer. *See Kutzman v. Derrel's Mini Storage, Inc.*, 354 F.Supp.3d 1149, 1156 (E.D. Cal. 2018) (noting that communications proposing a settlement to putative class members should provide "neutral" information).Indeed, the "failure to include a copy of the complaint add[s] to [the] misleading nature of communications." *Id.* at 1155(citing *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014)).

To begin with, putative class members would have travel to the respective courthouseson a weekday to obtain a copy of the complaint *for a fee*—which is not practical or possible for most, if not all, putative class membersbecause they work on weekdays—and now is impossible because courthouses are closed due to

---

[2]This matter was removed to federal court on May 3, 2019. (Dkt. No.1])

the coronavirus pandemic. Nor did Defendants tell them they could obtain a copy of the complaint online if they have access to the internet, register with the respective court, and have a credit card that they could use to pay the fee for the document.And even if Defendants did give instructions on how to obtain a copy of the "complaint" online,putative class members would be unlikely to find thecomplaint on the online docket.  That is because the San Bernardino Superior Court's online docket lists only the First Amended Complaint, a copy of which is only available by purchasing the entire Notice of Removal packet—which putative class members would have no way of knowing. (*See* Declaration of Melissa Grant [Grant Decl.], Ex. A.)  Similarly, those putative class members who were directed to this Court for a copy of the "operative complaint" would have no way of knowing that the "operative complaint" refers to the First Amended Complaint, let alone that a copy of it can only be obtained by purchasing the entire Notice of Removal packet as well. (Grant Decl., Ex. B.)

Defendants argue that under the *County of Santa Clara*, "there is no requirement that the Complaint must be attached to the settlement agreement. (Dkt. 63.)  Defendants' argument misses the point. While *County of Santa Clara* states "there is no *strict* requirement" that the complaint be attached to the settlement communications,that case and others *hold* that the failure to append the complaint ***can be misleading*** and "the putative class must have been given the necessary information to choose whether to accept the settlement checks."*Id.*; *Camp*, 300 F.R.D. at 624 ("failure to include a copy of the complaint added to misleading nature of communications").  In *Kutzman*, the Eastern District found the failure to append a copy of the complaint to the settlement communications to be one of the critical, material omissions that led the court to order a court-approved curative noticeto be sent to all putative class members to which the complaint would be attached alongside the settlement offer and release. *Kutzman*, 354 F.Supp.3d at 1157, 1160.  The district court also ordered the defendant to

"give ample time to the putative class members to decide whether to accept" the offer and to "encourage them to discuss the issue with Plaintiffs' counsel as well as independent counsel." *Id*.at 1160.The court also ruled that the settlement agreements were "voidable" at the election of the putative class members after receiving the curative notice packet. *Id.*

Here, the failure to attach a copy of the complaint to Defendants' settlement communications is particularly problematicnot only because of the cost and difficulty putative class members would have in obtaining a copy of the correct complaint on their own, but also because Defendants failed to provide "a full description of the claims" and to provide putative class members with contact information for Plaintiffs' counsel.*Camp* 300 F.R.D. at 624-25; *Kutzman*, 354 F.Supp.3d at 1157. (*See* discussion below.)

### 2. Defendants' Communications Did Not Describe the Nature of Plaintiffs' Claims

The consequences of Defendants' failure to provide the potential class members with a copy of the complaint is compounded by its total failure to describe the nature of Plaintiffs' claims. On this point, the decision in *County of Santa Clara*is instructive.  In that putative class action, the plaintiffs alleged "that defendant pharmaceutical companies overcharged them by charging a price for their drugs greater than the ceiling prices imposed by Section 340B of the Public Health Service Act of 1992."*County of Santa Clara*, 2010 WL 2724512, at *1.One of the defendants sent putative class members checks and an "accompanying letter explain[ing] that these payments were a refund for overcharged drugs, and that acceptance of these refunds constituted accord and satisfaction, and a release of future claims."*Id.*Plaintiffscontended"that this communication did not provide a full, fair, and accurate explanation of putative class members' rights" and that defendants had miscalculated the cost of the components of the top price they could charge under the statute. and it was not made in good faith." *Id.*

The court concluded that "[w]hile there were not any alleged misstatements in the letter, it was inadequate to inform the putative class. Not only did the letter omit a summary of the plaintiffs' complaint, it did not even provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case." *County of Santa Clara*, 2010 WL 2724512, at *4. Further, "[Defendants] at a minimum should have explained the specific claims that plaintiffs allege[d] against [Defendants], precisely how the new components were calculated, and how closely the new calculations aligned with plaintiffs' allegations." *Id.*

Here, Defendants admit that their settlement communications "must make clear the nature of Plaintiffs' claims, so that the putative class member can make a decision about whether or not to sign the release." (Dkt. No. 63 at 17.) But that is **not** what Defendants did. Defendants' cover letter presented a large block quote from its Settlement Agreement that they contend "describes each asserted claim in plain language." (Dkt. No. 63 at 17-18 (quoting Dkt. No. 63-1 (Ex. A at 3)).) But the portion of the quoted passage that supposedly "describes each asserted claim in plain language" simply states:

> The Lawsuit alleges that Kindred committed violations of the California Labor Code, including unpaid overtime and wages, failure to provide compliant meal breaks and/or rest periods, failure to pay premiums for split shifts, meal breaks and/or rest periods, non-compliant wage statements, failure to provide reporting time pay, failure to pay all wages due at termination, and failure to reimburse employees for the use of their personal cell phones and cell phone data to carry out job duties and the expenses related to traveling to designated clinics to undergo drug testing or physical exams at or near the time of hire.

(Dkt. No. 63-1 (Exs. A-E.) This paragraph does not fully explain in plain language the nature of the claims and the factual allegations in Plaintiffs' First Amended Complaint such that putative class members could make ***informed*** decisions as to whether to settle those claims for a flat $350, as Defendants contend. (Dkt. No. 63 at 18-22.) And Defendants know it as their suggestion made three times in the

opposition reveals. (Dkt. No. 63 at 18:15, 19:10-12; 20:3-4.)According to Defendants,the requirement that they fully explain the nature of the claims alleged is satisfied because theytoldpotential class members "where the employee may get a copy of the complaint." (*Id.*)But as discussed above, Defendants failed to attach a copy of the operative complaint to their settlement communications and instead referencedthe illusory ability of putative class members to obtain a copy of the complaint themselves from the San Bernardino or Santa Ana courthouses.

Defendantsalsopresent a muddle of other arguments that purportedly support their position that "the settlement agreements clearly identify the pending class action and state the nature of the claims."**But their arguments succeed only in *obfuscating*the fact that the language of their settlement communications *does not* explain Plaintiffs' claims *at all*.** (Dkt. 63 at 29-32.)

For example, Defendants claim that the settlement communications encourageputative class members to consult an attorney. Not so. The cover lettersays nothing about consulting an attorney and the Settlement Agreement's second to last paragraph merely requires them to affirm that they are "entering into this Agreement freely and voluntarily after having been advised of my right to consult an attorney of my choice.  However, I understand that Kindred will not pay attorney's fees or costs, if any, associated with any consultation with any attorney."  (Dkt. 50-1, Exs. A-E.) Defendants also argue that class members were not precluded from contacting other class members (Dkt. 63at 21)—although Defendants did provide any class members' contact information.  And Defendants argue that they were not required to provide Plaintiffs with advance notice of their settlement communications. (*Id.* at 21-22.) How these argumentsshed any light on the nature of Plaintiffs' claims and the factual allegationsin the operative complaint is not apparent.

Finally, Defendants fail to support its position with any case law discussing their failure to explain Plaintiffs' claims in its settlement communications.  On the

other hand, Defendants argue that "Plaintiffs' cited cases include factual scenarios where the defendants either did not mention a pending action at all **or *mentioned it without a complete description of the claims*.**" (Dkt. 63 at 19 (emphasisadded)(citing *County of Santa Clara*, and other cases.)  But that is exactly what Defendants did here.  Their settlement communications mentioned Plaintiffs'claims in wage-and- hour-law shorthand. They do not explain them at all.

Indeed, here, as in *County of Santa Clara*, "at a minimum [Defendants] should have explained the specific claims that plaintiffs allege against [Defendants]." 2010 WL 2724512, at *4.  This failure—coupled with the others discussed by Plaintiffs in their Motion and herein—made it impossible for putative class members to make an informed decision as to whether to accept the settlement offers.

It must be remembered that Court's "primary purpose" in regulating and restraining a defendant's settlement communications with potential class members is "to ensure that potential class members receive accurate and impartial information regarding the status, purposes, and effects of the class action." *Kutzman*, 354 F.Supp.3d at 1160 (citing *O'Connor*, 2014 WL 1760314 at *8 (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (1985)).) Thus, "[a]n order under *Gulf Oil* does not require a finding of actual misconduct— rather, the key is whether there is 'potential interference' with the rights of the parties in a class action." *Slavkov v. Fast Water Heater I, LP*, 2015 WL 6674575 at *2 (N.D. Cal. Nov. 2, 2015).

### 3.   Defendants' Communications Failed to Provide the Identity and Contact Information of Plaintiffs' Counsel

Defendants also failed to provide the identity and contact information of Plaintiffs' counsel. Courts unanimously agree that this failure is a significant factor in renderinga defendant'ssettlement communications to putative class

members misleading and improper. *See*, *e.g.*, *County of Santa Clara*, 2010 WL 2724512 at \*4(invalidating releases obtained by letter to putative class that did not, *inter alia*, include contact information for plaintiffs' counsel.[3]

Plaintiffs' counsel's contact information is critical information that should not have been omitted. *See Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. Apr. 15, 2014) ("the Employee Letter is entirely one-sided, omitting relevant information regarding Plaintiffs' claims and failing to provide contact information for Plaintiffs' counsel"); *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F.Supp.3d 1149, 1157 (E.D. Cal. Dec. 18, 2018)("The inclusion of opposing counsel's information is critical, because it gives the putative class direct access to get 'the other side of the story' regarding the settlement offer").

Defendant has provided no explanation for this critical omission.  They merely cite *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 736 (2003) for the unremarkable proposition that they are not precluded from contacting class members because a class has not yet been certified. (Dkt. 63 at 21.)  But that is not the issue here and certainly does not explain or excuse Defendants' omission of the identity and contact information of Plaintiffs' counsel in their settlement communications.

Defendants erroneously claim that they were not required to provide Plaintiffs' counsel's contact information because the Settlement Agreement states, "I am entering into this Agreement freely and voluntarily after having been

---

[3] *See also Eshelman v. Othoclear Holdings, Inc.*, No. C 07-01429 JSW, 2007 WL 2572349, at \*3 (N.D. Cal. Sep. 4, 2007) (including plaintiffs' counsel's contact information is a factor in determining whether corrective action is necessary); *Romero v. May Trucking Company*, No. EDCV 17-2406 JGB (SHKx), 2018 WL 5905604 (C.D. Cal. Mar. 15, 2018) (same); *Slavkov*, 2015 WL 6674575 at \*6-7 (invalidating settlement releases where contact information of plaintiffs' counsel was omitted); *In Re M.L. Stern Overtime Litigation*, 250 F.R.D. 492 (S.D. Cal. 2008) (including plaintiffs' counsel's contact information is a factor in finding employer's letter not coercive); *Marino v. CA Cafe, Inc.*, No. 16-cv-6291 YGR, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) (finding defendant's communications misleading where, *inter alia*, letter did not inform absent class of opposing counsel's contact information).

advised of my right to consult with an attorney of my choice."(*Id.*)  It is preposterous to suggest that potential class members could as a practical matter retain and pay any counsel to evaluate a $350 settlement.Only by providing class members with Plaintiffs' counsel's contact information can they "get 'the other side of the story' regarding the settlement offer."

### 4.      Defendants' Communications Failed to Provide the Material Status of the Class Action

Defendants' settlement communications should have "provide[d] the material status of the pending class action—namely that this Court is on the eve of a deciding whether to grant Plaintiffs' Motion for Class Certification and how that decision could impact the value of their claims." *See County of Santa Clara*, 2010 WL 2724512 at *4 ("BMS asserts that the letter included all that was required, including the name of the case and the explanation that it was a putative class action. This is erroneous"); *see also Kutzman*, 354F. Supp. 3d at 1160 (citing *O'Connor*, 2014 WL 1760314, at *8 ("[T]he Court reminds both parties that the primary purpose here is 'to ensure that potential class members receive accurate and impartial information ***regarding the status, purposes and effects of the class action***."(quoting *Kleiner*, 751 F.2d at 1203)(emphasis added)).).

Here, Defendants' Cover Letter provides two facts regarding the status of the case: "[t]he Lawsuit has not been 'certified' as a class action," and "[c]urrently, there is no date set for trial." (Dkt. 63-1, Ex. A at 11.)  This is the equivalent of the information that the court in *County of Santa Clara* found to be insufficient.  ("BMS should not have concealed material information. It was required to provide enough information so that the recipients would not be misled about the strength or extent of the claims and the purpose of Rule 23 was not frustrated.")  *Id.*  It would obviously be material to potential class members that a motion for class certification is currently pending because the value of their claims would be significantly increasedshould the class be certified. But Defendants

concealed this information.

Defendants argue that their omission of the class certification hearing date in April 2020 was not misleading because "[t]he Settlement Agreements were distributed in December 2019." (Dkt. 63 at 22.) But the briefing schedule for the motion was set by court order on November 12, 2019, pursuant to a stipulation filed on November 1, 2019.(Dkt. 25, 27.)  Moreover, Plaintiffs' Motion for Class Certification was filed on March 13, 2019. (Dkt. 32.)   Thus, Defendants omitted the crucial fact that a class certification motion was pending even though that fact was known to them before their settlement communications were sent to potential class members.

### 5. Defendants' Communications Fail to Identify the Value of Class Members' Claims or Explain How Would Be Calculated

*County of Santa Clara* holds that "the putative class must have been given the necessary information to choose whether to accept the settlement checks." 2010 WL 2724512, *4.  As Plaintiffs asserted in their Motion, Defendants failed to provide any information about the value of potential class members' claims or how that value could be determined. (Dkt. 50.)  Defendants do not dispute that they did not provide any claim valuation information.  Instead, Defendantsonly told potential class members that the flat $350 they offered "could be more or less than what you might receive if you wait for the case to be resolved." (Dkt. 63.) That statement is the antithesis of a valuation and provides no information to potential class members that could assist them in evaluating the settlement offer.

### 6. Defendants' Communications Fail to Explain the Basis of the Settlement Offer

Instead of providing material information regarding the value of the claims, Defendants offer a one-size-fits-all $350 settlement amount.  The implication of the offer is that it bears some resemblanceto the claims the Settlement Agreement

releases.

Defendants argue that they are not required to explain the offer amount, andattempt to distinguish *County of Santa Clara* by arguing that in that case "the letter affirmatively misled the customers about the calculation of the refunds." (Dkt. 63 at 22) Here, Defendants provide no explanation of the calculation at all. Quite simply, providingless information than defendants did in *County of Santa Clara—i.e.* no information at all—is unquestionably a misleading material omission.

Defendants nevertheless attempt to justify this omission by stating in its opposition that "Defendants offered a lump sum to each putative class member to settle what Defendants' contend are meritless claims." (Dkt. 63 at 23.)  This self-serving statement does not assist potential class members in assessing Defendants' $350 settlement offer.  The fact is Defendants"conceal[ed] material information (about the settlement offer amount). . .[in an] attempt to influence the decision" of putative class members not to participate in the class action, "thereby reducing its liability."*See* Manual for Complex Lit. § 21.12 (citing*Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir.1985).).  Concealing that information—coupled with the other misleading material omissions in Defendants' settlement communications—warrants corrective action, which in the Ninth Circuit may include invalidating the settlement agreements. *See Camp,* 300 F.R.D. at 624; *see also Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D.Cal. 2010).

## 7. Defendants' Communications are False, Misleading, and Coercive

As stated above and the moving papers, under *Gulf Oil*, adistrict court has the authority and obligation to prevent misleading communications to putative class members, including communications that "undermine Rule 23 by encouraging class members not to join the suit." *O'Connor*, 2013 WL 6407583 at

*5.  Here, Defendants' communications do exactly that.  They tell potential class members that they can either accept some money now for "meritless claims" or "wait years"when "it is certainly possible that you could recover nothing. . ." (Dkt. 50, Exs. A-F.)

In addition, Defendants' settlement communications are inherently coercive."Courts have also recognized that in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when the employer solicits opt-outs from its workers." *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010).  "Unsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. This is especially true when the parties are engaged in an ongoing employer-employee relationship." *Id.* (citations and internal quotations omitted).

Here, Defendants retained a Human Resources Consultant, Hope Jacobson, for the specific purpose of communicating *in person or by telephone* with potential class members. (Dkt. 63 at 10.)  But Ms. Jacobson is *not a neutral party*—Defendants "retained" her; she is therefore beholden to them.  As their agent and proxy, her role as the sole source of information about the settlement provided to current and former employees beyond the settlement communicationsisinherently coercive. Moreover, what Ms. Jacobsonhas told potential class members in her telephone calls is not known.  Nor is there any evidence what she told them in the in-person meetings she held with some of them.  Her involvement in unsupervised communications with potential class members thus presents an "acute risk of coercion" that the Court should not allow.

### 8.    Defendants' Proposed ReleaseIs Overbroad

Defendants' release improperly insulatesthemfrom PAGA claims for civil penalties for violations of the Labor Code based on the facts alleged in Plaintiffs' complaint, even though Plaintiffs did not plead a PAGA claim.  The release states:

I am expressly waiving my rights to relief based on claims asserted or ***that could have been asserted*** in the Lawsuit based upon the facts pled . . ..I also acknowledge that all such individual relief (including,**without limitation**,claims for **related penalties**, injunctive relief, declaratory relief, interest, and attorneys' fees and costs) based upon the facts and allegations pled . . .are forever barred by this Agreement. . .

… I further **acknowledge** that upon receipt of the settlement payment . . , I will have been paid all wages, compensation, premiums, interest and **penalties** owed under the claims being released by me in this Agreement.

(Dkt. 63-1, Ex. A at 3 (emphasis added.)

Defendant admits that a PAGA release requires court approval, but argues because Plaintiff did not plead PAGA claims, court approval is not required here. (Dkt. 63 at 25, n.6.)  Not so.  The release clearly includes claimsbased on the facts pled that "could have been asserted" for, *inter alia*,"civil penalties"—which could ***only*** be recovered by the Labor Commissioner or current or former employees.*See* Cal. Lab. Code § 2698 *et seq*.

The release also impermissibly ***waives***putative class members' right to reimbursement under Labor Code section 2802, which is prohibited by section 2804.[4]  Defendants' only response to thisfact is to argue that it does notdo that, instead putative class members settled their reimbursement claims.  (Dkt. 63.)The argument is contrary to the language of the release quoted above.  Moreover, Defendants' fail to explain how the flat $350 offered reimburses the class for their necessary expenses.

Finally, Defendants' release is so overbroad that it arguably encompasses claims under the Fair Labor Standards Act ("FLSA"), the settlement of which requires judicial approval or approval by the Secretary of Labor.  *Slavkov*, 2015 WL 6674575 at *6.

---

[4]"Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

**B.     Defendants' Procedural Objections Are Without Merit**

     **1.     There Are No Standing Issues Precluding The Invalidation Of Defendants' Settlement Agreements**

Defendants argue that Plaintiffs do not have "standing" to seek "rescission" of any settlement agreements—the argument misses the point. (Dkt. 63.) Plaintiffs do not claim to be parties to the agreements and have not moved to rescind them.  Plaintiffs have moved for the Court to exercise the Court's inherent and statutory authority to protect the interests of the putative class and the class action mechanism itself from Defendants' misleading and improper settlement communications

Under Fed. R. Civ. P. 23(d), "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100. Standing is therefore not at issue.  Because Defendants' standing argument conflates a *party's* ability to rescind an agreement, with the *Court's* duty and authority to void settlements and releases that were obtained through improper communications with putative class members, none of the cases Defendants cite in support of their "standing" argument has any application.[5]

Moreover, the Court indisputably has authority to void the settlement agreements. *See, e.g.*, *Kutzman*, 2018 WL 6625791, at *4 (finding a corrective notice and ruling the settlement agreements voidable is the proper remedy for defendant's misleading and coercive settlement communications); *County of Santa Clara*, 2010 WL 2724512 (invalidating releases obtained via misleading letters); *Slavkov*, 2015 WL 6674575, *7 (ordering a curative notice and invalidating

---

[5]Defendants' only other citation is to *Madrigal v. Tommy Bahama Group*, No. CV 09-08924 SJO (MANx), 2010 WL 4384235 (C.D. Cal. Oct. 18, 2010), which decided whether the plaintiffs could assert claims for violation of the provisions in Cal. Lab. Code Section 206.5.[5]  The court held that plaintiffs lacked the "injury in fact" requirement of Article III because they had not signed the releases prohibited by the Code. *Id.* at *2. *Madrigal* has no application here.

settlements that, *inter alia*, purported to release claims requiring court approval to do so).

### 2. *Pick-Up Stix* Authority Is Not At Issue Here

Defendants argue that they are free to settle the absent class members' claims under *Chindarah v. Pick-Up Stix, Inc*. 171 Cal.App.4th 796 (2009) (permitting settlements of Labor Code § 206 claims with potential class members where a bona fide dispute exists). This would be true if Defendants had not misled class members in the myriad of ways detailed above.  But that is not the case here. Thus, Defendants' citation of *Pick-Up Stix* is unavailing.

### 3. Plaintiffs Satisfied L.R. 7-3's Meet And Confer Requirement

Defendants accuse Plaintiffs of not complying with the meet and confer requirements of L.R. 7-3. Not so.  Plaintiffs met and conferred with Defendants in connection with their *ex parte* application that sought the same relief as the instant Motion. (Dkt. 38.)  The Court denied Plaintiffs' *ex parte* application without prejudice and invited Plaintiffs to file the instant Motion. (Dkt. 42.) Defendants' opposed Plaintiffs' *ex parte* application (Dkt. 39). Thus, their suggestion that a further conference of counsel could have "resolved this motion" is disingenuous at best.

### 4. The State Court Did Not Previously Find Defendants' Settlement Communications Lawful

Defendants repeatedly claim in their opposition that the state court previously found Defendants' 2018 communications lawful. Wrong. Defendants only support for their claim is a state court minute order; but that minute order contains no such finding. (*See* Dkt. 1 at 136.)  The motion Plaintiffs submitted in state court was denied without prejudice because the court did not have sufficient

1    evidence from class members.[6] (*Id.*) (*See* Grant Decl. at ¶ 4.)

2        **C.    Court Intervention Is Required ToProtect the Integrity of the**

3            **Class Action Mechanism and the Interests of the Putative Class**

4        **1.    Defendants' Solicitation of a Named Plaintiff Demonstrates**

5            **The Need For Judicial Oversight to Protect the Integrity of**

6            **the Class**

7    Defendants' communications' mailing list initially included two named Plaintiffs,

8    Mr. Kirby and Ms. Kingston. (Dkt. 63-1.)  Defendants reviewed the listpre-

9    mailing and removed only Mr. Kirby. (*Id.*)  Defendants argue that this lapse was a

10   "clerical error" and not grounds for a curative notice. While the Court mayaccept

11   Defendants' explanation, the incident highlights why judicial intervention is

12   necessary. Defendants should be required to produce the mailing list and any

13   future mailing list before the offending settlement communications are sent out.

14   An order to that effect would lend transparency to Defendants' communication

15   efforts and help to avoid further mishaps.  Defendants claim that such relief would

16   intrude on the attorney work-product privilege—which it would not—and that it is

17   unnecessary because Plaintiffs already have contact information for the entire

18   class. But Defendants do not claim to have sent its settlement communications to

19   the entire class.  The affected class members can only be accurately and

20   economically identified by Defendants.

21   **III.   CONCLUSION**

22       For the foregoing reasons, Plaintiffs respectfully request that the Court enter

23   an order specifically finding[7]that Defendants settlement communications with

24   _____

25       [6]Defendants do not dispute that Plaintiffs supported their motion with class
26   member declarations; they instead dispute their credibility, which given the fact
     that the settlement communications are on their face misleading and improper,
     does not negate the need for Court intervention under *Gulf Oil.*

27       [7]A district court may exercise is authority under *Gulf Oil* upon making "a
28   clear record and specific findings" that the settlement communications with
     putative class members were misleading and therefore threaten the fairness of the
     litigation process, the effectiveness of the class action mechanism, the integrity of

1  potential class members was misleading and improper in the manner discussed

2  herein and in Plaintiffs' moving papers and granting the relief that

3  Plaintiffsrequest in their entirety.

4

5  Dated: April 10, 2020                    Respectfully submitted,

6                                           Capstone Law APC

7

8                                           By:

9                                           Melissa Grant
                                            Robert Drexler
                                            Molly A. DeSario
10                                          Jonathan Lee

11                                          Attorneys for Plaintiffs Michael Kirby,
                                            Laura Kingston, Keosha Gates,
12                                          Martha Parra, Michelle Marie Dick,
                                            and Jeffrey Montes
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  the class, and the administration of justice generally. *Kutzman*, 354 F.Supp.3d at
    1159 (citations omitted).
                                    Page 17

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION RE: IMPROPER CLASS MEMBER
COMMUNICATIONS